IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DAVID W. HARRIS,**

    **Petitioner,**           CASE NO. 2:12-CV-107
                                         CRIM. NO. 2:09-CR-216
    **v.**                              JUDGE EDMUND A. SARGUS, JR.
                                         Magistrate Judge Kemp

**UNITED STATES OF AMERICA,**

    **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner, David W. Harris, filed this motion to vacate under 28 U.S.C. §2255 following the Court's imposition of a cumulative sentence of 120 months of imprisonment and five years of supervised release on charges that petitioner conspired to distribute a controlled substance (cocaine and cocaine base) and that he possessed a firearm in furtherance of drug trafficking activity. Petitioner pleaded guilty to those charges. Before sentencing, he moved to withdraw his plea, filing other motions as well. This Court denied all of those motions. After being sentenced, petitioner appealed, but the Court of Appeals affirmed the judgment of conviction, concluding that petitioner could raise no non-frivolous issues concerning his guilty plea, his sentence (which was the mandatory minimum sentence for the drug conspiracy charge), or the denial of his motions. *See United States v. Harris*, Case No. 11-3077 (6th Cir. Oct. 27, 2011).

In his §2255 petition, petitioner raises five claims. They are:

(1) That he received ineffective assistance of counsel;

(2) That he was subjected to an illegal search;

(3) That his due process rights were violated when the initial indictment was dismissed and a new indictment was filed later;

(4) That his guilty plea was involuntary; and

(5) That he was never allowed to see a copy of an indictment signed by the Grand Jury foreperson.

At the conclusion of his petition, petitioner also appears to request a reduction in sentence based on changes in the law which occurred after the time that sentence was imposed.

It is the United States' position that the five claims raised in the petition are without merit, and that petitioner is not entitled to any sentence reduction. For the following reasons, it will be recommended that the motion to vacate be **DENIED**.

## I. PROCEDURAL HISTORY

On September 10, 2009, the Grand Jury returned a six-count indictment against petitioner, charging him with four criminal offenses and alleging two counts of forfeiture. This was not the first time petitioner was charged; on January 16, 2009, the United States filed a criminal complaint charging petitioner with possessing cocaine with the intent to distribute it. The complaint alleged a single instance of such possession occurring on January 6, 2009, based on the fact that during the execution of a search warrant on that day, agents found a substance which appeared to be crack cocaine in petitioner's coat pocket. In that case, Case No. 2:09-mj-27, no proceedings were ever held, and the case was closed on February 26, 2009, because petitioner had been charged with the same criminal conduct (and other criminal conduct as well) in a superseding indictment returned in Case No. 2:08-

cr-186.

Petitioner was arrested on these charges on March 18, 2009. He appeared before Magistrate Judge Norah McCann King the same day, waived a detention hearing, and was detained pending trial. Petitioner was initially represented in that case by attorney Sean Boyle, and on July 5, 2009, petitioner signed a plea agreement in which he agreed to plead guilty to counts 115, 116, 128 and 145 of the superseding indictment. The latter two counts were forfeiture counts; the former two charged him with possession with intent to distribute over five grams of cocaine base and with possession of a firearm in furtherance of a drug trafficking crime.

A change of plea hearing was set for July 23, 2009, but it was vacated after petitioner changed his mind about pleading guilty. Mr. Boyle then withdrew from the case. The Court appointed attorney Kort Gatterdam to represent petitioner; the same day that happened, petitioner filed a motion to dismiss on speedy trial grounds, asserting that his rights had been violated by his continued imprisonment since March 19, 2009. Six days later, Mr. Gatterdam asked the Court to hold that motion in abeyance, requesting additional time to research the basis of the motion and to discuss it with petitioner. He subsequently advised the Court that the motion would not be withdrawn, and after the United States responded (arguing that because petitioner's counsel had consented to a continuance of the trial date to September 21, 2009, no Speedy Trial Act violation had occurred), the United States moved to dismiss the superseding indictment against petitioner because he had been separately indicted in this case. The Court granted that

3

motion on September 11, 2009.

Petitioner appeared for his arraignment on the new indictment on September 17, 2009, accompanied by Mr. Gatterdam. He pleaded not guilty at that time, and the case was set for trial. After the trial was continued, petitioner, still represented by Mr. Gatterdam, signed a plea agreement, appeared before the Honorable Edmund A. Sargus, Jr. on December 10, 2009, and pleaded guilty. He acknowledged at that time that he had discussed his decision to plead guilty "at some length" with his attorney, that he was satisfied with counsel's advice, that he understood the elements of the offenses he was pleading guilty to, that he understood the rights being waived by his guilty plea, that he understood the plea agreement, and that he had made the decision to plead guilty without being coerced or threatened. The Court accepted his plea. *See Transcript of the Change of Plea Hearing Before the Honorable Edmund A. Sargus, Jr., United States District Judge*, Doc. 35.

Nothing further of significance occurred in the case until April 1, 2010, when petitioner, who was awaiting sentencing, filed (pro se) a motion to suppress, challenging the January, 2009 search of his residence. The same day, also acting pro se, he filed two other motions: one to dismiss the case on speedy trial grounds, and one to withdraw his guilty plea. Twelve days later, he moved to dismiss the indictment because it had not been properly signed by a Grand Jury foreperson. The Court set a hearing on these motions, denied them on the record, and documented that action in a written order filed on May 24, 2010. Doc. 38. The sentencing described in the introductory section of the Report and Recommendation then followed, as did petitioner's unsuccessful appeal. Now the Court

must consider his motion to vacate.

## II. PRELIMINARY CONSIDERATIONS

The United States has chosen to address all of petitioner's claims on their merits. The Court agrees that the claim of ineffective assistance of counsel is one which can properly be raised in a motion filed under 28 U.S.C. §2255. However, given the record in this case, the same cannot be said for the bulk of petitioner's claims.

The Court begins with the claim that the search warrant which was executed on January 6, 2009, was issued without probable cause. First, petitioner raised that claim in one of the motions he filed after entering his guilty plea. This Court denied the motion on grounds that it had been waived by the guilty plea, and the Court of Appeals affirmed that ruling. The Court's initial ruling was undoubtedly correct. *See United States v. Lang*, 46 Fed. Appx. 816 (6th Cir. Sept. 8, 2002) (holding that a guilty plea made without reserving the right to appeal the denial of a motion to suppress precludes a later challenge to the legality of a search, *citing Tollett v. Henderson*, 411 U.S. 258, 267 (1973)); *see also United States v. McCormick,* 2011 WL 4696781 (N.D. Ohio Oct. 05, 2011) (same). Further, that ruling was affirmed on appeal. "'If issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack.'" *Moore v. United States,* 598 F.2d 439, 441 (5th Cir.1979), quoted in *Miller v. United States*, 28 F.3d 1213, *13 (6th Cir. July 8, 1994). Consequently, petitioner simply may not challenge the legality of the search warrant in this proceeding.

The same holds true for his third, fourth and fifth claims for relief. This Court, in

5

denying petitioner's motion for leave to withdraw his guilty plea, specifically found that the plea was voluntary, and it denied motions to dismiss which raised speedy trial issues and the alleged failure of the Grand Jury foreperson to sign the indictment. For the record, that last claim lacks any factual basis, because the sealed version of the indictment which is part of the Court's official records is, in fact, signed by the foreperson (and that fact was explained to petitioner by Judge Sargus at the hearing on his motions). Nevertheless, the denial of the motions containing these same grounds was the subject of petitioner's appeal, and the Court of Appeals found that there were no non-frivolous arguments to be made in support of reversal. Clearly, that Court considered the merits of these claims and found them lacking. That precludes this Court from re-examining them on collateral review. Consequently, although there is nothing in the petition which would suggest that any of these four claims have even the slightest merit, the Court is precluded from deciding that question. That leaves only the ineffective assistance of counsel claim and petitioner's request to be resentenced for the crack cocaine offense.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner claims that his attorney was ineffective and that this ineffectiveness led to his decision to plead guilty. Claims of ineffective assistance of counsel are not waived by a guilty plea. "Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'" *Padilla v. Kentucky*, 559 U.S. 356, ___, 130 S.Ct. 1473, 1480-81 (2010), *quoting McMann v. Richardson*, 397 U.S. 759, 771 (1970). Courts use the familiar test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), in this context as well.

As the *Padilla* court noted, 130 S.Ct. at 1482, "Under *Strickland*, we first determine whether counsel's representation 'fell below an objective standard of reasonableness.' 466 U.S., at 688, 104 S.Ct. 2052. Then we ask whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' *Id*., at 694, 104 S.Ct. 2052."

Here, petitioner's claim, repeated just as he asserts it, reads as follows:

> Ineffective assistance of counsel. Didn't file any defense motions on my behalf. No motion for severance was filed on original indictment which led to the second. Didn't want to file a motion to supress or anything period. Allowed my S.T.A. rights to be violated and cohersively helped the gov reach a conviction by aiding the vindictiveness of the prosecution. Passing threats and defending every argument that I wanted him to pursue which was my 4th 5th and 6th amendment rights. He did nothing but help the gov his only goal was to get a plea and move on.

Motion to Vacate, Doc. 83, at 4. Although petitioner does not say so specifically, this claim appears to be directed toward the actions of Sean Boyle, who represented petitioner through the first aborted plea hearing, and toward the additional actions (or inactions) of Kort Gatterdam, who represented him in the second case, including at the second plea hearing. In response to the motion, the United States has submitted detailed affidavits from both of these attorneys (as well as one from attorney Paula Brown, who represented petitioner on appeal) explaining why they did not file the motions which petitioner claims should have been filed. Petitioner has not filed a traverse, so the entire basis of his claim rests on the unsupported allegations of his motion.

Taking petitioner's claims in the order he presented them, the Court does not

understand how counsel's failure to file a motion for severance in Case No. 2:08-cr-186 could have prejudiced petitioner by influencing his decision to plead guilty in this case. Had counsel filed such a motion, and had it been granted, a new case would have resulted - which is exactly what happened when the indictment in this case was filed and petitioner was dismissed from the earlier case. Perhaps petitioner is claiming that if a severance had been granted, he would only have faced the charges in the original indictment and not the more serious charges leveled against him in this case, but there is nothing in the record suggesting that the United States would not have pursued these charges in the context of a severed case. Further, petitioner had the opportunity to plead guilty to the lesser charges contained in the superseding indictment filed in the first case, but, after entering into a plea agreement, changed his mind.

Usually, the prejudice which results from the failure of an attorney to move for severance is having to deal with confusing and unrelated evidence at trial; in other words, "[a] defendant is prejudiced if the jury would be unable to keep the evidence from each offense separate and unable to render a fair and impartial verdict on each offense." *United States v. Rox*, 692 F.2d 453, 454 (6th Cir. 1982). When a case does not reach the trial stage, the prejudice from failing to move for a severance is much harder to identify, and when the defendant ends up pleading guilty in a case which is not the case in which the motion allegedly should have been filed, it is harder still to imagine how the failure to move for a severance has affected the defendant at all. Added to this lack of prejudice, Mr. Boyle's affidavit states that he did not find any basis on which to move for a severance, and

8

petitioner has not identified any. Under these circumstances, there is no merit to the claim that counsel was ineffective by failing to request a severance prior to the time that petitioner was dismissed as a defendant in Case No. 2:08-cr-186.

Petitioner next contends that counsel (presumably both of his trial attorneys) should have filed a motion to suppress evidence. Although he does not say this directly, he seems to be arguing that had a motion to suppress been filed, and had it been granted, the case might have been dismissed and he would not have been faced with the choice either to go to trial or plead guilty.

Beyond a vague attack on the state search warrant, petitioner has not argued why he believes a motion to suppress would have been successful. Mr. Boyle's affidavit states that he reviewed the search warrant in question and concluded that the affidavit attached to it demonstrated probable cause for the search and that it was properly executed and signed. Mr. Gatterdam's affidavit contains similar statements, and specifically addresses what was apparently one of petitioner's issues with the search warrant - that the state court judge's signature on it may have been forged. Mr. Gatterdam states that he saw no evidence that this was so. There is nothing in the record which supports such a claim, and no basis upon which to conclude that a minimally competent defense attorney would have filed a suppression motion, given the absence of any facts suggesting that a valid argument attacking the constitutionality of the search could have been made.

To prove a claim of ineffective assistance of counsel based on the failure to move to suppress evidence seized pursuant to a search warrant, a petitioner "must ... prove that his

9

Fourth Amendment claim is meritorious ... in order to demonstrate actual prejudice." *Mitchell v. Stegall,* 2002 WL 31875529, *4 (E.D. Mich. Nov. 25, 2002). *See also Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986)("a meritorious Fourth Amendment issue is necessary to the success of a Sixth Amendment claim" of ineffective assistance of counsel based on the failure to file a motion to suppress). There is simply no basis upon which the Court could conclude that petitioner ever had a meritorious Fourth Amendment claim. Therefore, he is not entitled to relief based on his attorneys' failure to file a motion to suppress.

Petitioner's final specific allegation about his attorneys' performance relates to his belief that either his Sixth Amendment right to a speedy trial, or some provision of the Speedy Trial Act, was violated in this case. Again, under appropriate circumstances, this is a valid claim of ineffective assistance of counsel. However, in most situations, unless the petitioner can show that the indictment would have been dismissed with prejudice, he cannot prevail on such a claim because he would not have shown that, but for his counsel's failure to file the motion, the outcome of the proceedings would have been different. *See, e.g., Finley v. United States,* 2007 WL 2815440, *6 (S.D. Ohio Sept. 25, 2007).

Petitioner has failed to make that showing here. Even had the Court dismissed the indictment on speedy trial grounds, nothing suggests that such a dismissal would have been with prejudice. In considering whether a violation of the Speedy Trial Act justifies a dismissal with prejudice, there are "three factors that trial courts must consider ...: 1) the seriousness of the offense; 2) the facts and circumstances that led to the dismissal; and 3) the impact of reprosecution on the administration of the Speedy Trial Act and on the

10

administration of justice." *United States v. Moss*, 271 F.3d 426, 430 (6th Cir. 2000), *citing* 18 U.S.C. §3162(a). If the crimes involved are serious ones, as are the drug and gun charges filed against petitioner, that factor weighs against a dismissal with prejudice. *See United States v. Howard*, 218 F.3d 556 (6th Cir. 2000). So, too, do the facts and circumstances leading to any dismissal if the government is not responsible for any delay. *Id.* Finally, if the defendant cannot prove either that the delay was prejudicial or that the government committed some type of egregious or unacceptable misconduct, the third factor also weighs against a dismissal with prejudice. *Id.; see also United States v. Pierce*, 17 F.3d 146 (6th Cir. 1994).

Here, the Court is in full agreement with the analysis of the speedy trial issue contained in Mr. Gatterdam's affidavit; there was simply no violation of either the Act or the Sixth Amendment, and any motion raising that issue would have been frivolous. In particular, although more than thirty days passed between the filing of the original complaint and the return of an indictment against petitioner, he had not been arrested or served with a summons, nor had he appeared in court, on the complaint, so that the time for filing an indictment or information contained in 18 U.S.C. §3161(b) never began to run. *See, e.g., United States v. Mala*, 7 F.3d 1058, 1061 (1st Cir. 1992)("the Speedy Trial Act ... is not applicable to periods of delay antedating a defendant's arrest"). His arrest on state charges did not implicate the federal Act. "Only a federal arrest, not a state arrest, triggers §3161(b)." *United States v. Beede*, 974 F.2d 948, 950 (8th Cir. 1992). Additionally, any delays in taking the first case to trial were clearly the result of continuances granted at the request

of co-defendants, and to which petitioner did not object.

But, as the Court has indicated, even if a Speedy Trial Act claim had been cobbled together based on those delays, any dismissal would certainly have been without prejudice, thus defeating this claim. Even the possibility that, had such a dismissal occurred, a grand jury might not have re-indicted petitioner, is belied by this record; a grand jury did just that when it returned the indictment in this case. Finally, there is absolutely no basis for any constitutional claim of prejudicial delay based on this record; any delay was short, and petitioner has not alleged, let alone presented any evidence on the issue, that the delay was uncommonly long, that the government was responsible for it, or that his defense was somehow prejudiced, all of which are essential components of a speedy trial claim under the Constitution. *See, e.g., United States v. Watford*, 468 F.3d 891, 901 (6th Cir. 2006), *citing Barker v. Wingo*, 407 U.S. 514, 530 (1972). Therefore, nothing about counsel's performance as to the speediness of the trial court proceedings was deficient or prejudiced petitioner in any way, and he cannot obtain relief on this portion of his ineffective assistance of counsel claim.

The balance of petitioner's claim is very general. Basically, he asserts that counsel seemed more interested in having him plead guilty than in trying the case. However, this Court has concluded that petitioner's guilty plea resulted from his knowing and voluntary decision. When that is the case, petitioner must point to some advice from counsel that fell below accepted standards for criminal defense attorneys and which influenced his decision to the extent that, but for the advice he received, he would not have pleaded guilty. *See Hill*

*v. Lockhart*, 474 U.S. 52 (1985).  Here, apart from the specific motions which petitioner contends that his counsel should have filed, he has not described any particular advice they gave him which he relied on in pleading guilty, which he contends was erroneous, and which, had it been correct, would have persuaded him to reject the government's plea offer and insist upon a trial.  Such vague and conclusory allegations give the Court nothing to evaluate, and do not support a claim for relief.  *See, e.g., Sims v. United States,* 2010 WL 2891674 (C.D. Ill. July 20, 2010). Overall, petitioner's ineffective assistance of counsel claim lacks merit.

## IV.  RESENTENCING

Petitioner's final claim is that he is entitled to be resentenced due to changes in the law concerning sentences for crack cocaine offenses.  The United States argues that petitioner is not entitled to the benefit of any changes in the law because the Fair Sentencing Act of 2010, while it altered certain sentencing disparities between offenders sentenced for cocaine offenses and those sentenced for crack cocaine offenders,  had no impact on this case.

One of the significant changes in the law made by the Fair Sentencing Act of 2010, Pub.L. No. 111–220, 124 Stat. 2372 (2010), was to amend 21 U.S.C. §841 by striking out "50 grams" and inserting "280 grams" in that portion of the statute relating to the mandatory minimum sentence for possession with intent to distribute, or distribution of, crack cocaine. Under the former version of this statute (the version in effect when petitioner committed the crime charged in count one), a ten-year mandatory minimum sentence was triggered

if the weight of crack cocaine exceeded fifty grams.  Now, if the case involves weights of crack cocaine between 28 and 280 grams, which would include cases like this one, where the relevant weight of the crack cocaine was 58 grams, the mandatory minimum sentence would be only five years.  *See* 21 U.S.C. §841(b)(1)(A)(iii) and 21 U.S.C. §841(b)(1)(B)(iii).  Despite this change, the United States asserts that "because the base offense level, of 32, did not change even under the alternative guideline calculation" petitioner is "not eligible for a retroactive reduction based on the November 1, 2010 crack amendment."  *Answer in Opposition*, Doc. 95, at 21-22.

Petitioner was sentenced on January 19, 2011, which was after the effective date of the Act (the Act became effective on August 3, 2010).  In *Dorsey v. United States*, 132 S.Ct. 2321, 2335 (2012), the Supreme Court held that "Congress intended the Fair Sentencing Act's new, lower mandatory minimums to apply to the post-Act sentencing of pre-Act offenders."  Thus, when petitioner was sentenced, the mandatory minimum sentence to which he was subject based on the amount of crack cocaine involved in the case was five years.

That fact does not help petitioner at all, however.  The Fair Sentencing Act did not change the mandatory minimum sentences for powder cocaine offenses.  The quantity of powder cocaine which triggers a mandatory minimum sentence of ten years is still five kilograms.  21 U.S.C. §841(b)(1)(A)(ii).  Petitioner pleaded guilty to count one of the indictment charging him with conspiracy to distribute and possess  with intent  to distribute both 50 or more grams of crack cocaine and five kilograms or more of cocaine.

14

As the Court noted during the sentencing hearing, "[t]he conduct in this case involved between 5 and 15 kilograms of cocaine ...." *Transcript of Sentencing Hearing of January 13, 2011*, Doc. 74, at 14. The Presentence Investigation Report confirms this determination. This case is similar to *United States v. Montgomery*, 473 Fed. Appx. 173 (3d Cir. June 11, 2012), where the Court of Appeals for the Third Circuit denied a sentence reduction to a defendant who, like petitioner, had been convicted of an offense involving both crack and powder cocaine, with the amount of powder cocaine exceeding the 5-kilogram amount needed for the mandatory minimum sentence. That Court observed that under 18 U.S.C. §3582(c)(2), which authorizes reductions in sentence for defendants who were sentenced "based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o)," the defendant was ineligible for a sentence reduction because, even though the Sentencing Commission lowered the guidelines for crack cocaine, "[t]he sentencing range for powder cocaine was left unaltered by the modifications to the crack Guidelines." *Id*. at 174. Here, the case for denial of any reduction is even stronger because the mandatory minimum sentence for the amount of cocaine for which petitioner was responsible did not change. Thus, he was properly sentenced to the prison term imposed by the Court based on the amount of cocaine alone, and the changes made in the crack cocaine statutes and guidelines can have no effect on his case.

## IV. RECOMMENDATION

For the reasons set forth above, it is recommended that petitioner's motion to vacate,

15

correct or set aside sentence (Doc. 83) be **DENIED.**

## V.  PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir.1981).

/s/ Terence P. Kemp
United States Magistrate Judge